IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
(Tampa Division)

FILED
01 JUN -6 AM 10: 20

[CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA]

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> THOMAS HOUCK AND MICHAEL LEWIS, ) <br> ) <br> Defendants. ) <br> ) | CASE NO. <br> 8:01-CV-1071-T-26MSS <br><br> COMPLAINT |

Plaintiff, Securities and Exchange Commission ("SEC" or "Commission") alleges as follows:

1.  The SEC brings this action to enjoin Defendants Thomas Houck ("Houck") and Michael Lewis ("Lewis") from continuing to violate Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. 240.10b-5].

## JURISDICTION AND VENUE

2.  This Court has jurisdiction over this action pursuant to Sections 21(d), 21(e), 21A and 27 of the Exchange Act [15 U.S.C. 78u(d), 78u(e), 78u-1 and 78aa].

3.  Certain of the acts and practices constituting violations of the Securities Act and Exchange Act have occurred within the Middle District of Florida and were perpetrated through the use of the means and instrumentalities of interstate commerce, the mails, or the facilities of a national securities exchange.

## THE DEFENDANTS

4. Defendant Thomas Houck resides in Bradenton, Florida.

5. Defendant Michael Lewis resides in Bradenton, Florida. At the time of the transactions and events alleged in this complaint, Defendant Lewis was employed as a senior vice-president of consumer lending at American Bancshares, Inc. ("American Bancshares" or the "Company"), and worked at the Company's headquarters in Bradenton.

## FACTUAL ALLEGATIONS

6. At the time of the transactions and events alleged in this Complaint, American Bancshares was a bank holding company headquartered in Bradenton, Florida, and its wholly-owned subsidiary, American Bank, had 10 branch offices throughout the west coast of Florida. At the time of the transactions and events alleged in this Complaint, American Bancshares' securities were registered with the Commission and were quoted on the National Association of Securities Dealers, Inc.'s Automated Quotation System.

7. At 8:57 a.m. on September 7, 1999, American Bancshares issued a public announcement (the "announcement") that it had signed a definitive merger agreement with Gold Banc Corporation ("Gold Banc"), pursuant to which American Bancshares' shareholders would tender their shares in exchange for a certain number of Gold Banc shares.

8. The announcement followed a non-public offer from Gold Banc to acquire American Bancshares, and several days of due diligence conducted by Gold Banc at

American Bancshares' corporate headquarters in Bradenton, Florida. This due diligence occurred from Sunday, August 29, 1999 to Tuesday, August 31, 1999.

9. On or about the morning of Monday, August 30, 1999, Lewis discovered non-public information that led him to conclude that American Bancshares would be taken over. This information, which included the presence of individuals (who turned out to be Gold Banc personnel), along with several of American Bancshares' senior executives, reviewing numerous documents in American Bancshares' main conference room, prompted Lewis to ask at least one of American Bancshares' senior executives if the bank was being taken over. The senior executive, however, declined to answer Lewis' question.

10. During the morning of Monday, August 30, 1999, Lewis, in breach of a fiduciary duty, or similar duty of trust and confidence, he owed American Bancshares and its shareholders as a vice-president of the Company, communicated to his friend, Defendant Houck, material nonpublic information concerning the unusual activity at the Company's headquarters.

11. On August 30, 1999, Defendant Houck, after speaking with Lewis, purchased 1,500 shares of American Bancshares' stock at a price of $9 15/16.

12. Also on August 30, 1999, Defendant Houck told another individual to purchase American Bancshares' stock. Based upon Defendant Houck's tip, that individual purchased 1,500 shares of American Banchsares' stock at a price of $10 per share.

13. Defendant Houck, who was aware of Defendant Lewis's position in the Company, knew, or was reckless in failing to learn, that Defendant Lewis, by

3

communicating to him the material nonpublic information, had breached a fiduciary duty, or similar duty of trust and confidence, he owed American Bancshares and its shareholders.

14. On September 7, 1999, after the announcement, American Bancshares' stock price rose as high as $14 ½ per share, before closing at $13.875. That same day, Defendant Houck sold his 1,500 shares of American Bancshares stock for $14 ½ per share, resulting in a total profit (after commissions and fees) of $6,145.84. Also on September 7, 1999, the individual who Houck tipped sold his 1,500 shares of American Bancshares' stock for $14 9/16 per share, resulting in a total profit (after commissions and fees) of $6,145.84.

## COUNT I

### VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT

### AND RULE 10b-5 THEREUNDER

15. Plaintiff Commission incorporates and realleges herein the allegations set forth in paragraphs 1 through 14 of this Complaint.

16. Defendants Houck and Lewis, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails, and of any facility of any national securities exchange, in connection with the purchase or sale of the securities, as described herein, have been, knowingly, willfully or recklessly: (i) employing devices, schemes or artifices to defraud; (ii) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (iii)

engaging in acts, practices and courses of business which have operated, and will operate as a fraud upon the purchasers of such securities.

17. By reason of the foregoing acts, Defendants Houck and Lewis violated, and unless enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. 78j(b)] and Rule 10b-5, 17 C.F.R. 240.10b-5, thereunder.

## RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests that this Court:

### I.

### Declaratory Relief

(a) Declare, determine and find that Defendants Houck and Lewis have committed the violations of the federal securities laws alleged herein; and

(b) Declare, determine and find that Defendant Houck received ill-gotten gains through the violations of the federal securities laws described herein.

### II.

### Permanent Injunctive Relief

Enter a Final Judgment of Permanent Injunction, permanently enjoining Defendants Houck and Lewis, their agents, servants, employees, attorneys-in-fact, and all persons in active concert or participation with them who received actual notice of the Final Judgment by personal service or otherwise, and each of them, from violating Section 10(b) of the Exchange Act [15 U.S.C. 78j(b)] and Rule 10b-5 [17 C.F.R. 240.10b-5] thereunder.

## III.

## Disgorgement

Enter a Final Judgment of Permanent Injunction ordering Defendant Houck to disgorge all ill-gotten gains, plus prejudgment interest thereon, arising out of the conduct alleged herein.

## IV.

## Civil Money Penalties

Issue an Order directing Defendants Houck and Lewis to pay civil fines and/or penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. 78u-1].

## V.

## Further Relief

Grant such further relief as the Court may deem just and appropriate.

## VI.

## Retention of Jurisdiction

Additionally, the Commission respectfully requests that the Court retain jurisdiction over this action in order to implement the terms of all orders and decrees that may be

entered, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

June 5, 2001                                    Respectfully submitted,

                                                _____
                                                Ivan P. Harris
                                                Branch Chief
                                                Fla. Bar No. 0085405
                                                (Designated Trial Counsel Pursuant to
                                                Local Rule 1.05(c))
                                                Telephone Number: (305) 982-6342

                                                Gary Klein
                                                Senior Counsel
                                                N.Y. Bar No. 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

                                                Attorneys for Plaintiff
                                                **SECURITIES AND EXCHANGE COMMISSION**
                                                1401 Brickell Avenue, Suite 200
                                                Miami, Florida 33131
                                                Telephone: (305) 982-6360